## Case No. 10,113.

### NELSON v. PHOENIX CHEMICAL WORKS.

[7 Ben. 37.] [1]

District Court, E. D. New York. Oct., 1873.

WHARFINGER—DAMAGE TO VESSEL BY GROUNDING AT A WHARF.

1. It is the duty of a shipmaster, before placing his vessel in a berth, to ascertain whether the depth of water in the dock is sufficient for the draught of his vessel.
[Cited in Crossan v. Wood, 44 Fed. 95.]

2. A wharfinger is not bound to maintain a depth of water in the berth at his wharf, sufficient for all vessels at all tides.
[Cited in The Francesca T., Case No. 5,030.]

3. It is the duty of a wharfinger to give information as to inequalities in the surface of the bottom, when that is material to the safety of a vessel about to moor at his wharf.

[1] [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

4. A direction by a wharfinger, who is consignee of cargo on board of a vessel, to the master of the vessel, to put his vessel in a certain berth, is not equivalent to a notification that the water is deep enough at all times to float the vessel.

This was a libel by [Christopher Nelson] the owner of the Gen. Lyon, to recover damages for an injury received by her, by grounding while lying in a berth at a dock owned by the respondents. The vessel had brought a cargo consigned to the respondents, who directed the berth at which they wished her to discharge.

Wilcox & Hobbs, for libellant.
G. W. Hoxie, for respondents.

BENEDICT, District Judge. No recovery can be had in this action, except upon proof of negligence on the part of the wharfinger, resulting in damage to the libellant's vessel, while moored at the defendants' wharf. The evidence shows no negligence in the construction of the wharf. As to the condition of the bottom, in the berth to be occupied by vessels when fast to the pier, the evidence is not sufficient to warrant the conclusion that it was not made as level as could be reasonably demanded, and as any obligation on the part of the wharfinger required.

Some variation in the depth of water in the berth is proved, but there is no evidence of the presence of any stones, or any obstructions on the bottom, or that the bottom was such that a sound boat would be liable to be injured by resting upon it at low tide. The water in the berth was not deep enough at low tide to float the libellant's vessel, but this fact is not sufficient to render the wharfinger liable for injury sustained by the vessel when grounded at low tide.

The proposition asserted in behalf of the libellant, that, in the absence of notice to the contrary, every vessel, even of the size of the Great Eastern, has the right to assume that the water in the dock at a public wharf is of sufficient depth to float her at all tides, cannot be sustained. A wharfinger is not bound to maintain a depth of water in the berth at his wharf sufficient for all vessels at all tides.

The proposition, that it is the duty of a wharfinger to give information as to inequalities in the surface of the bottom, when that is material to the safety of a vessel about to moor at his wharf,—Sawyer v. Oakman [Case No. 12,402],—is entirely consistent with the other proposition, that it is the duty of the shipmaster, before placing his vessel in the berth, to ascertain whether the depth of water in the dock is sufficient for the draught of his vessel.

The present is a case of no inequality in the surface of the bottom, but where the injuries to the boat arose simply because of insufficient water in the berth to float the vessel at low tide. But it is insisted that inasmuch as the evidence shows that the wharfinger, who was the consignee of the cargo on board

this vessel, directed the master to place his vessel in the berth she took, without informing him that the dock was not deep enough to float the vessel at low tide, this was equivalent to an express notification that the water was deep enough at all times to float the libellant's vessel. To this I cannot agree. Some vessels can safely be permitted to take the ground at a wharf at low tide, and it is a common thing for some vessels to do this; but other vessels are not sufficiently strong to permit such a course; and whether the libellant's vessel could safely do it or not could be known only to the master. The master knew the condition of his vessel and her draught. He had also full means of ascertaining the depth of water in the berth, and was bound to ascertain it. He was bound to know whether she would be compelled, and if so able safely, to take the ground at low water.

The damage he subsequently sustained arose either from a failure to inform himself as to the depth of water, or a failure of judgment as to the strength of his vessel. I either case the fault is his, and not that of the wharfinger. The libel must be dismissed, with costs.